**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

EMELY WINNERT,                          :
                                        :
                Plaintiff,              :
                                        :
v.                                      :    Civil Action No. 1:26-cv-270
                                        :
EQUIFAX INFORMATION SERVICES, LLC,      :
EXPERIAN INFORMATION SOLUTIONS, INC., :
and TRANS UNION, LLC                    :
                                        :
                Defendants.             :
_____:

## COMPLAINT

Plaintiff Emely Winnert files this Complaint against Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., and Trans Union, LLC. In support, she alleges as follows:

## PRELIMINARY STATEMENT

1.      Congress enacted the Fair Credit Reporting Act ("FCRA") to protect consumers from the devastating impacts of inaccurate credit reporting. S. Rep. No. 91-517, at 1 (1969) (explaining that the FCRA was intended to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report"); *see also Guimond v. Trans Union Credit Info.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (explaining that the FCRA was enacted "to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner" (citations omitted)).

2.      The statute's express purpose is for "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel,

insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b).

3.      Even so, inaccurate credit reporting is still a pervasive, long-standing issue for consumers. For example, in 2012, the FTC published a reporting finding that twenty percent of consumers who participated in its study had at least one error on their credit report.[1] Almost ten years later, the situation was even worse: a 2021 study found that more than 34 percent of surveyed consumers identified at least one error on their credit reports.[2]

4.      Here, Ms. Winnert's credit reports included a collection account for a debt that she did not owe.

5.      When Ms. Winnert disputed this inaccurate information with the Defendants and provided proof demonstrating that she did not owe the debt, each of the Defendants failed to adequately investigate her disputes or update the inaccurate entries on her credit reports.

6.      As a result, Ms. Winnert alleges that each of the Defendants violated the FCRA, § 1681e(b), by failing to reasonably ensure the maximum possible accuracy of her credit reports. *See Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b) and explaining that "'assure' means to make sure or certain: put beyond all doubt, 'maximum' means the greatest in quantity or highest degree

---

[1] *See* Fed. Trade Comm'n, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003*, at 64 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accuratecredit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.

[2] *See* Syed Ejaz, Consumer Reports, *A Broken System: How the Credit Reporting System Fails Consumers and What to Do About It* (June 10, 2021), https://advocacy.consumerreports.org/wp-content/uploads/2021/06/A-Broken-System-How-the-Credit-Reporting-System-Fails-Consumers-and-What-to-Do-About-It.pdf.

attainable, and 'possible' means something falling within the bounds of what may be done, occur or be conceived" (cleaned up) (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993))).

7.     Ms. Winnert also alleges that each of the Defendants violated the FCRA, §1681i, by failing to fully investigate her disputes.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

9.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because Ms. Winnert resides in this District and Division, and a substantial part of the events giving rise to Ms. Winnert's claims occurred here.

## PARTIES

10.     Plaintiff Emely Winnert is a natural person residing in this District and Division.

11.     Defendant Equifax is a foreign limited liability company with a principal place of business in Atlanta, Georgia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

12.     Defendant Experian is a foreign corporation with a principal place of business in Costa Mesa, California. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

13.     Defendant Trans Union is a foreign limited liability company with a principal place of business in Chicago, Illinois. Trans Union is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

14.    In August 2025, Ms. Winnert went to a dealership to purchase a car and was surprised when they provided her with her credit score, which seemed very low considering that she pays all of her bills on time and has never defaulted on a financial obligation.

15.    Ms. Winnert learned that her low credit score was caused by a Defense Finance and Accounting Service ("DFAS") collection account, which reflected that she owed $1,785 for tuition.

16.    This reporting was inaccurate. Ms. Winnert received tuition assistance as part of her employment with the National Geospatial-Intelligence Agency ("NGA") and complied with all of NGA's requirements to receive that assistance.

17.    Ms. Winnert disputed this collection account with Experian in August 2025 and explained that the collection account was incorrect, that she did not owe DFAS any money, and that the account should be removed from her report.

18.    In response to this request, Experian refused to conduct an adequate investigation and verified that the collection account should remain on Ms. Winnert's report.

19.    Ms. Winnert disputed the collection account with Equifax, Experian, and Trans Union in October 2025. She explained that she did not owe DFAS any money and attached a letter from NGA's Tuition Assistance Program Manager explaining that Ms. Winnert did not owe the amount that DFAS was reporting on her credit report.

20.    Upon information and belief, Equifax, Experian, and Trans Union forwarded Ms. Winnert's dispute to DFAS.

21.    Upon information and belief, in response to Ms. Winnert's dispute, DFAS performed a cursory review of its records and verified its previous inaccurate reporting.

4

22.     Rather than rely on the documents that Ms. Winnert provided with her dispute or contact NGA for additional information, Equifax, Experian, and Trans Union relied entirely on DFAS's response to Ms. Winnert's dispute.

23.     As a result, the inaccurate information continued to report on Ms. Winnert's credit reports.

24.     Ms. Winnert sent three follow-up disputes to Experian and Trans Union in October 2025 and December 2025. Each of these follow-up disputes again explained that Ms. Winnert didn't owe any money to DFAS and attached the NGA letter stating as much.

25.     Experian and Trans Union again used the same defective investigation process to "investigate" and respond to Ms. Winnert's disputes—instead of reviewing the proof that Ms. Winnert attached to her disputes, they merely relied on the furnisher, DFAS, to investigate and respond to the disputes.

26.     As a result, when Experian and Trans Union received DFAS's dispute responses that the previous reporting was correct, they did not update Ms. Winnert's credit reports to remove the inaccurate information from her reports. As a result, Ms. Winnert's credit reports continued to report the inaccurate collection account.

27.     As a result of Defendants' conduct, Ms. Winnert has suffered significant actual damages. She must maintain a security clearance as a condition of her employment, and she has been worried that the inaccurate collection account will jeopardize her clearance and thus her job. She has also suffered a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

### *Defendants' Investigations Willfully Violated the FCRA*

28.     As a standard practice, Equifax, Experian, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the

response of the furnisher despite several court decisions admonishing this practice. *See, e.g.*, *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

29.     Upon information and belief and consistent with their standard policies and procedures, Equifax, Experian, and Trans Union automatically generated their "investigation" results once DFAS verified the status of the account. Equifax, Experian, and Trans Union did not take any extra actions to verify the accuracy of the information that the furnishers provided them.

30.     Instead, Equifax, Experian, and Trans Union blindly accepted the furnishers' version of the facts and continued to report the inaccurate, derogatory information on Ms. Winnert's credit report.

31.     Equifax, Experian, and Trans Union continue the practice of parroting the furnishers' response despite several lawsuits alleging (and establishing) that they fail to conduct a reasonable investigation under the FCRA.

32.     Equifax, Experian, and Trans Union do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

33.     As a result, at all times relevant to this Complaint, Defendants' conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. For example, their

conduct was willful because they ran a risk of harm that was known, or so obvious it should have been known, by failing to adequately investigate consumer disputes or implement any procedure to identify and correct these common errors before furnishing reports.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)

34.     Ms. Winnert incorporates the preceding allegations.

35.     Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Winnert's credit reports and credit files that they published and maintained.

36.     Because of Defendants' conduct, Ms. Winnert suffered actual damages, including, without limitation, a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

37.     Defendants' conduct in violating § 1681e(b) was willful, rendering them liable to Ms. Winnert for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

38.     In the alternative, the Defendants were negligent, entitling Ms. Winnert to a recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681i

39.     Ms. Winnert incorporates the preceding allegations.

40.     Defendants violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide the furnishers with all the relevant information about Ms. Winnert's disputes in violation of § 1681i(a)(2); (3) failing to

review and consider all relevant information submitted by Ms. Winnert in violation of §1681i(a)(4); and (4) failing to promptly delete the disputed inaccurate items of information from Ms. Winnert's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

41.    Because of Defendants' violations of §1681i, Ms. Winnert suffered actual damages, including, but not limited to, a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

42.    Defendants' violations of § 1681i were willful, rendering them liable to Ms. Winnert for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

43.    In the alternative, the Defendants were negligent, entitling Ms. Winnert to a recovery under 15 U.S.C. § 1681o.

WHEREFORE, Ms. Winnert moves for statutory, actual, and punitive damages as pleaded, as well as her attorneys' fees and costs against each of the Defendants; for prejudgment and post-judgment interest at the legal rate, and any other relief the Court considers appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
**EMELY WINNERT**

*/s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB #93738
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167

Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com
*Counsel for Plaintiff*